UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| LISA JEFFERY | ) | |
| *On behalf of herself and others* | ) | |
| *similarly situated.* | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Case No._____ |
| CASHCALL, INC. | ) | |
| Defendant | ) | |
| | ) | |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

### I.      INTRODUCTION

1.  This is an action brought for violations of the Consumer Financial Protection Act of
2010, 12 U.S.C. §§ 5531(a) and 556(a) (the "CFPA"); the Electronic Funds Transfer Act,
15 U.S.C. § 1693 *et seq* (the "EFTA"); the Fair Debt Collections Practices Act, 15 U.S.C.
§ 1692 *et seq* (the "FDCPA"); the Telephone Consumer Protection Act, 47 U.S.C. § 227
*et seq* (the "TCPA"); Civil RICO under 18 USC § 1964; the New Hampshire Unfair,
Deceptive, or Unreasonable Collections Practices Act, NH RSA 358-C; New Hampshire
Regulation of Business Practices for Consumer Protection, NH RSA 358-A; and all
applicable common law causes.

### II.      JURISDICTION AND VENUE

2.  This suit alleges violations of 12 U.S.C. §§ 5531(a) and 5536(a), and 15 U.S.C. § 1693.
This Court has jurisdiction because the case is brought under "Federal consumer financial
law." 12 U.S.C. § 5565(a)(1).

3.  This Court has jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331, for the
FDCPA and TCPA claims. *See also* Mims v. Arrow Financial Services, 132 S. Ct. 740

(2012) (resolving split between the Circuits and holding that Federal Jurisdiction does exist for private TCPA claims).

4. Additionally, this Court also has jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332.

5. Supplemental jurisdiction exists for all other claims, pursuant to 28 U.S.C. § 1367.

6. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff resides in this district, and/or where Defendant transacts business in this district.

### III.        PARTIES

7. Plaintiff Lisa Jeffery is a natural person residing in Hillsborough County, New Hampshire.

8. Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3) and RSA 358-C:1(I).

9. Defendant CashCall, Inc. ("CashCall") (also *dba* Delbert) is a corporation with a principal place of business at 1600 South Douglass Road, Anaheim, CA 92806.

10. Defendant CashCall is an entity who at all relevant times was engaged, by the use of phones and writings, in the business of attempting to collect a "debt" from the Plaintiff, as defined by 15 U.S.C. § 1692a(5) and RSA 358-C:1(IV).

11. Defendant John Paul Reddam is the President and CEO of CashCall.  Mr. Reddam owns 100% of CashCall's corporate stock.  Mr. Reddam has a mailing address of 1600 South Douglass Road, Anaheim, CA 92806.

12. Western Sky Financial, LLC ("Western Sky") is a South Dakota limited liability company, with a listed address of P.O. Box 370, Timber Lake, SD 57656.

13. Martin A. Webb is the sole owner of Western Sky.  Webb is a member of the Cheyenne River Sioux Tribe, but is not a tribal official or representative of the tribe's government.

14. CashCall is

## IV.    FACTUAL BACKGROUND

**Statutory Prerequisites:**

15. The Plaintiff is a natural person contacted by Defendant CashCall for the purposes of collecting a debt owed or allegedly owed to another.

16. The Defendant CashCall is thoroughly enmeshed in the debt collection business.

17. The Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or once due a creditor other than Defendant CashCall, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes.

18. Upon reasonable suspicion and belief, the Plaintiff believes that CashCall contacted her on her cell phone.

19. Defendant CashCall uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or regularly collects or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed to due to another.

20. Upon reasonable suspicion and good faith belief, the Defendant CashCall used an automated, automatic, or predictive telephone dialing system or telephone equipment to make collection calls.

**Payday Lending, Generally:**

21. Payday lending takes advantage of low income people's need for cash.  Payday loans are

marketed as short term loans for emergency cash, but these loans often end up affecting borrowers in the long term.  Many borrowers cannot repay the entire loan amount right away, and instead, end up making payments that include exorbitant interest rates, or taking out a loan from another lender to satisfy their initial debt.  Borrowers thus become stuck in a vicious cycle of accruing interest and debt, and struggle to meet their basic needs, such as food, shelter, and medical care.

22. Payday lending is allowed in the state of New Hampshire, but payday loans must conform to certain statutory standards.  Payday lenders cannot lend more than $500 to an individual borrower, and the interest rate (APR) of such loans cannot exceed 36%. NH RSA 399-A:13(VI) and 399-A:13(XX).

23. Payday lenders justify extremely high interest rates by pointing to the allegedly short term nature of the loans, and the high risk profile of the low-income borrowers, to whom these loans are targeted.

24. Payday lenders generally do not examine the borrower's ability to repay the loan within a short period of time.

25. Payday lenders present borrowers with extended payment schedules, designed to maximize the repayment period so that the lender can gain substantial amounts from the high interest payments.

26. Payday lenders misrepresent these oftentimes illegal and void loans as legitimate to consumers.

27. Payday lenders use various contractual mechanisms to prevent these usurious practices from state and judicial review, such as choice of law provisions and provisions claiming tribal immunity.  These provisions are unconscionable and unenforceable.

**Payday Lending Scheme, with Respect to Western Sky and CashCall:[1]**

28. CashCall (also *dba* Delbert) is engaged in the business of purchasing and servicing payday loans in association with Western Sky.

29. CashCall and Western Sky operate in tandem.  Consumers apply for small loans or payday loans, purportedly from Western Sky, as the Plaintiff here has done.  Pursuant to an agreement between Western Sky and WS Funding[2], CashCall provides website hosting and support services for Western Sky.  CashCall further reimburses Western Sky for all costs of maintenance, repair, and/or update costs associated with Western Sky's server; for its office, personnel, and postage; and provides Western Sky with a toll free telephone number and fax number.  CashCall provides the marketing services for Western Sky, including creating and distributing printed materials, internet, television, and radio advertisements.

30. When a consumer such as Ms. Jeffrey applies for a payday loan, CashCall reviews the application for underwriting requirements.  Once approved, Western Sky executes a promissory note and debits a "Reserve Account" to fund the promissory note.  The Reserve Account is a demand-deposit bank account set up in the name of Western Sky which carries a balance equal to the full value of two days promissory notes, calculated on the previous month's daily average.  By agreement, CashCall is required to set up, fund, and maintain the balance in the Reserve Account.

---

[1] The factual allegations in this section are summarized from an Order to Cease and Desist, issued by the State of New Hampshire Banking Department against the same Defendants involved in the instant case

[2] WS Funding is a wholly-owned subsidiary of CashCall.  It is unclear where WS Funding is located or incorporated.  The New Hampshire Banking Department does not have a mailing address for WS Funding, and WS Funding is not licensed with that Department.  WS Funding is an entity involved with the convoluted scheme between Western Sky and CashCall, as yet another deceptive and confusing moveable part.

31. Once the loan is funded, CashCall is obligated, again by agreement, to purchase the promissory note from Western Sky.  The timeframe for such a purchase is not specified in the agreement, but CashCall generally makes contact with consumers within one business day of the filing of the application.

32. Western Sky does not accept any direct payments from consumers on notes made under this business scheme.

33. CashCall, by agreement, indemnifies Western Sky for all costs arising or resulting from any and all civil, criminal, or administrative claims or actions.  Additionally, CashCall is responsible for tracking all consumer complaints regarding the payday loans and notifying Western Sky of such complaints.

34. The Defendants have taken substantial steps to conceal this business scheme from consumers and state and federal regulators.  Western Sky does not identify CashCall on its website or any marketing materials.

35. Under this scheme, Western Sky is nothing more than a front to enable CashCall to evade licensure by state agencies and to exploit Indian Tribal Sovereign Immunity to shield its deceptive practices from prosecution by state and federal regulators.  While Western Sky holds itself out as a stand alone tribal entity, in reality, CashCall creates all advertising and marketing materials, reimburses Western Sky for administrative costs, reviews consumer applications, funds the loans, and services as well as receives payments on the loans.

36. CashCall is thus the de facto lender under this scheme, and in the instant case.

**Factual Background in the Instant Case:**

37. On or about June 8, 2012, Ms. Jeffery took out an illegal payday loan (the "Loan") for the

amount of $2,525.00, with an APR of 139% by accessing Western Sky's website.

38. The actual cost to Ms. Jeffery, of paying the Loan in full over the course of the 48 month payment schedule, would have been $14,063.87.  This is a full $11,538.87 above and beyond the original amount of the loan.

39. Ms. Jeffery was unable to get the Loan without allowing for automatic electronic fund transfers under certain circumstances.  Obtaining the Loan from Western Sky and/or CashCall was predicated on her providing her banking information, and allowing for electronic fund transfers to occur.

40. The Defendants misrepresented the Loan to Ms. Jeffery as a legitimate, legal loan, when in fact the Loan is void under state law.

41. Western Sky's Consumer Loan Agreement (the "Loan Agreement") contains a choice of law provision stating that the Loan Agreement is subject to the laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.

42. The Loan Agreement further states that it was executed as if Ms. Jeffery was physically present within the exterior boundaries of the Cheyenne River Indian Reservation, and "that this Loan Agreement is fully performed within the exterior boundaries of the Cheyenne River Indian Reservation."  See Attached Loan Agreement, as Exhibit A.

43. Ms. Jeffery has never been to the Cheyenne River Indian Reservation. She applied for the loan from her home in New Hampshire.

44. None of the loan activity actually occurs on the Cheyenne River Indian Reservation.  As previously stated, Western Sky uses third parties to carry out all administrative tasks. Further, CashCall is actually the de facto lender for this Loan.

45. The Defendants have gone to great lengths to avoid any responsibility for their actions

and have created deceptive schemes and structures to try and circumvent the proper

application of law.

46. The Defendant CashCall has also attempted to collect on this illegal and void debt.

47. The Defendant CashCall sent Ms. Jeffery several letters and emails in an attempt to

collect on the debt.

48. Upon reasonable suspicion and belief, CashCall contacted Ms. Jeffery on her cell phone.

49. CashCall used several unfair or deceptive tactics in attempts to frightened Ms. Jeffery,

and force her to pay the void debt.  CashCall threatened to report her to credit bureaus,

threatened legal action, and directly contacted Ms. Jeffery's employer regarding the

Loan.

**Class Action Allegations:**

50. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure

23(a) and (b) on behalf of herself and a class of similarly situated individuals as defined

below:

> All persons in the United States of America who received autodialed or
> predictive dialed telephone calls from CashCall to their cellular telephone,
> where CashCall had no express written consent before the call was made.

> This Class excludes the Defendants, the officers, members, and directors of the
> Defendants, members of their immediate families and legal representatives, heirs,
> successors, or assigns, and any entity in which the Defendants have or had a
> controlling interest.

51. Plaintiffs do not know the exact number of class members because such information is in

the exclusive control of the Defendants.  Based on information and belief, and

information obtained from the New Hampshire Banking Department's Order to Cease

and Desist, there are at least 787 members of this Class in New Hampshire alone.  The

exact number of class members and their identities is known or may be ascertained by

Defendants, through their business records.

52. The Class is so numerous that joinder of all members is impracticable.

53. There are questions of law and fact common to the Class, to wit:

    a. Whether the Defendants have a practice of investigating a borrower's ability to repay a loan before extending credit;

    b. Whether Defendants set the periodic repayment amounts to maximize collection of interesting on loans;

    c. Whether Defendants' interest rates violate the CFPA's prohibition on "unfair, deceptive, or abusive act[s] or practice[s]."

    d. Whether Defendants' other payday lending practices violated the CFPA's prohibition on "unfair, deceptive, or abusive act[s] or practice[s]."

    e. Whether Defendants are liable to the Plaintiff and other class members for disgorgement or other equitable remedies and, if so, in what amount; and

    f. Whether Defendants are liable to Plaintiff and other class members for reasonable attorneys' fees.

54. The Plaintiff is a member of the Class.  Her claims are typical of the claims of the Class, because the Plaintiff's and all Class members' claims originate from the same conduct, practice and procedure on the part of the Defendants, and because the Plaintiff possess the same interests and has suffered the same injuries as each member of the Class.

55. The Plaintiff will fairly and adequately protect the interests of the members of the Class, and has retained counsel experienced and competent in class action litigation.  The Plaintiff has no interests that are contrary to or in conflict with the members of the Class that the Plaintiff seeks to represent.

56. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

57. A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The Class is readily definable and is one for which records should exist. Prosecution of class member claims as a class action will eliminate the possibility of repetitious litigation.  Treatment of the controversy as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  This class action presents no difficulties in management that would preclude maintenance as a class action.

V.      <strong>CLAIMS FOR RELIEF</strong>

<strong><u>Count I: Consumer Financial Protection Act of 2010</u></strong>

58. The Plaintiff reasserts and incorporates by reference herein each of the above such paragraphs as if fully stated within this count.

59. The Defendants' extension of credit under the terms provided without examining Ms. Jeffery's ability to repay is a violation of the CFPA's prohibition on "unfair, deceptive, or abusive act[s] or practice[s]."

60. The exorbitant interest rates charged by the Defendants combined with the automatic access to and deduction from Ms. Jeffery's bank account violates of the CFPA's prohibition on "unfair, deceptive, or abusive act[s] or practice[s]."

61. The business scheme used by the Defendants to avoid liability and confuse consumers is a violation of the CFPA's prohibition on "unfair, deceptive, or abusive act[s] or

practice[s]."

62. Defendants' representation of the Loan as a short term emergency loan was deceptive and false.

63. The Defendants' representation of the Loan as legal and legitimate is a violation of the CFPA's prohibition on "unfair, deceptive, or abusive act[s] or practice[s]."

64. The Defendants have falsely reported the status of the Loan to credit rating agencies as if it was a legitimate debt.  Their representation of the Loan as legitimate to credit rating agencies is deceptive.

WHEREFORE, the Plaintiff prays for relief and judgment, as follows:

    a.   Adjudging that the Defendant violated the CFPA;

    b.   Awarding the Plaintiff her actual damages;

    c.   Awarding Attorneys' Fees, pre-judgment interest, and post-judgment interest as permissible by law; and

    d.   Awarding such other and further relief as the Court may deem just and proper.

## Count II: Electronic Funds Transfer Act

65. The Plaintiff reasserts and incorporates by reference herein each of the above such paragraphs as if fully stated within this count.

66. The Defendants are "persons" as this term is defined in Section 1005.2(j) of Regulation E, 12 C.F.R. § 1005.2(j).

67. Section 913(1) of the EFTA, 15 U.S.C. § 1693k(1), provides that no person may condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers.

68. The law further states that "[n]o financial institution or other person may condition an

extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers, except for credit extended under an overdraft credit plan or extended to maintain a specified minimum balance in the consumer's account."  Section 1005.10(e)(1) of Regulation E, 12 C.F.R. § 1005.10(e)(1).

69. The Official Interpretation of Regulation E, Section 1005.10(e)(1), 12 C.F.R. § 1005.10(e)(1)-1, Supp.1, explains that creditors may not require repayment of loans by electronic means on a preauthorized recurring basis.

70. In offering a payday loan to Ms. Jeffery, the Defendants conditioned the extension of credit on recurring preauthorized electronic fund transfers, thereby violating Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), and Section 1005.10(e)(1) of Regulation E, 12 C.F.R. § 1005.10(e)(1).

WHEREFORE, the Plaintiff prays for relief and judgment, as follows:

      a. Adjudging that the Defendant violated the EFTA;

      b. Awarding the Plaintiff damages in accordance with 15 U.S.C. § 1693m;

      c. Awarding Attorneys' Fees, pre-judgment interest, and post-judgment interest as permissible by law; and

      d. Awarding such other and further relief as the Court may deem just and proper.

### Count III: Violation of 15 U.S.C. § 1692c(b)

71. Plaintiff reasserts and incorporates by reference herein each of the above such paragraphs as if fully stated within this count.

72. "[A] debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of

the debt collector." 15 U.S.C. § 1692c(b).

73. Defendant CashCall violated 15 U.S.C. § 1692c(b) by communicating, in connection with the collection of a debt, with reckless disregard for third parties who might learn from the messages that the plaintiff is being sought after for debt collection.

74. Defendants did not take any precautions to prevent such disclosure.

75. Standard industry practice dictates procedures reasonably necessary to protect consumers' privacy where a Debt Collector chooses to leave telephone messages. No such precautions were taken by the Defendant here.

76. Further, Defendant CashCall directly communicated with Ms. Jeffery's employer on at least one occasion regarding the Loan and Ms. Jeffery's alleged debt.  This is a clear violation of 15 U.S.C. § 1692c(b).

WHEREFORE, the Plaintiff prays for relief and judgment, as follows:

a. Adjudging that the Defendant violated 15 U.S.C. § 1692c(b);

b. Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k, in the amount of $1,000.00;

c. Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k;

d. Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action as allowed for by 15 U.S.C. § 1692k;

e. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and,

f. Awarding such other and further relief as the Court may deem just and proper.

## Count IV: Violation of 15 U.S.C. § 1692d

77. Plaintiff reasserts and incorporates by reference herein each of the above such paragraphs

as if fully stated within this count.

78. The FDCPA at 5 U.S.C. § 1692d forbids a debt collector from engaging in "conduct that natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

79. In particular, Section 1692d(6) of the FDCPA prohibits a debt collector from placing calls to a consumer "without meaningful disclosure of the caller's identity."

80. "Meaningful disclosure" requires that the caller state his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call.

81. Defendant CashCall, on at least one occasion, violated 15 U.S.C. § 1692d(6) by placing telephone calls in which the caller did not meaningfully disclose the identity of CashCall, or their authority for CashCall along with their name.

82. Indeed, CashCall never disclosed that they were, in fact, the de facto lender of the Loan to Ms. Jeffery.

83. Further, CashCall contacted Ms. Jeffery's employer directly and disclosed the nature of her debt, causing her great distress.  Such conduct harassed Ms. Jeffery.

84. CashCall has repeatedly threatened to report, and may have reported, the Loan to credit reporting agencies.

WHEREFORE, the Plaintiff prays for relief and judgment, as follows:

    a.  Adjudging that the Defendant violated 15 U.S.C. § 1692d;

    b.  Awarding the Plaintiff her statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000;

    c.  Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

> d.  Awarding Plaintiff her reasonable attorney's fees and costs incurred in this
> action pursuant to 15 U.S.C. § 1692k(a)(3);
>
> e.  Awarding Plaintiff pre-judgment and post-judgment interest as permissible by
> law; and
>
> f.  Awarding such other and further relief as the Court may deem just and proper.

### Count V: Violation of 15 U.S.C. § 1692e

85.  The Plaintiff reasserts and incorporates by reference herein each of the above such paragraphs as if fully stated within this count.

86.  The law states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

87.  As described more fully herein, the Defendant CashCall used deceptive or misleading representation in connection with their attempted collection of a debt.  To wit:

> a.  Failing to disclose the business scheme and relationship between CashCall
> and Western Sky;
>
> b.  Failing to disclose that CashCall was the actual lender of the Loan;
>
> c.  Representing that Ms. Jeffery's failure to pay the Loan could be reported to
> credit reporting agencies; and
>
> d.  Treating the Loan as legitimate, legal debt, when in fact the Loan is void
> under state law.

88.  In addition, the law prohibits the "false representation of – (A) the character, amount, or legal status of any debt…" 15 U.S.C. § 1692e(2)(A).

89.  Here, the Defendant CashCall misrepresented the character, amount, or legal status of the

debt they were attempting to collect, since the Loan is void under state law.

90. Furthermore, the law prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

91. As described herein, the Defendant used false representation and deceptive means to attempt to collect a debt.

92. "It is a violation to send any communication that conveys to the consumer a false sense of urgency." Leyse v. Corporate Collection Services, Inc., 2006 WL 2708451 (S.D.N.Y. 2006) (citing Federal Trade Commission Staff Commentary 53 Fed.Reg. 50097 (1988)); see also Romine v. Diversified Collection Servs., 155 F. 3d 1142, 1143 (9th Cir. 1988) (holding that a debt collector violates 15 U.S.C. § 1692e(10) by creating a false sense of urgency).

93. Defendant CashCall created a false sense of urgency by repeatedly threatening to report Ms. Jeffery to a credit reporting agency for her failure to pay the Loan.

94. CashCall, on or about February 17, 2016, sent Ms. Jeffery an email offering her a settlement offer for the Loan.  The offer had a quick expiration and created a false sense of urgency by stating that the settlement offer would expire shortly.

WHEREFORE, the Plaintiff prays for relief and judgment as follows:

    a.   Adjudging that the Defendant violated 15 U.S.C. § 1692e;

    b.   Awarding the Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

    c.   Awarding the Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

    d.   Awarding the Plaintiff reasonable attorneys' fees and costs incurred in this action

- 16 -

pursuant to 15 U.S.C. § 1692k(a)(3);

    e.   Awarding Plaintiff pre-judgment and post-judgment interest as permissible by law; and

    f.   Awarding such other and further relief as the Court may deem just and proper.

### Count VI: Violation of 15 U.S.C. § 1692f

95. The Plaintiff reasserts and incorporates by reference herein each of the above such paragraphs as if fully stated within this count.

96. "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

97. The Defendant CashCall used unfair or unconscionable means to collect or attempt to collect a debt. To wit:

    a.   Failing to disclose that CashCall was the actual lender of the Loan;

    b.   Representing that Ms. Jeffery's failure to pay the Loan could be reported to credit reporting agencies; and

    c.   Treating the Loan as legitimate, legal debt, when in fact the Loan is void under state law.

98. In addition to the above-stated, CashCall contacted Ms. Jeffery's employer and upon suspicion and belief, disclosed this debt to her employer.

99. This contact to her employer caused Ms. Jeffery distress and put unfair and unconscionable pressure upon her to settle the Loan.

100.    The Defendant CashCall's representations to Ms. Jeffery, and contact to her employer, unfairly pressured her in an attempt to make her pay an illegal debt.  That is unfair.

WHEREFORE, the Plaintiff prays for relief and judgment as follows:

    a.   Adjudging that the Defendant violated 15 U.S.C. § 1692f;

    b.   Awarding the Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

    c.   Awarding the Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

    d.   Awarding the Plaintiff reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

    e.   Awarding Plaintiff pre-judgment and post-judgment interest as permissible by law; and

    f.   Awarding such other and further relief as the Court may deem just and proper

### Count VII: Telephone Consumer Protection Act

101.    The Plaintiff reasserts and incorporates by reference herein each of the above such paragraphs as if fully stated within this count.

102.    The TCPA makes it unlawful for any person to make a call using any automatic telephone dialing system or an artificial or prerecorded voice: "to the telephone number assigned to a paging service, cellular telephone service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

103.    The Statutory scheme of the TCPA also provides for a private action for violations of the statute: "A person or entity may, if otherwise permitted by the laws or rules of a court of a State, bring in an appropriate court that State- (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such

actions." 47 U.S.C. § 227(b)(3).

104.       "If the court finds that the defendant willfully or knowingly violated this

subsection or the regulations prescribed under this subsection, the court may, in its

discretion, increase the amount of the award to an amount equal to not more than 3 times

the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3).

105.       "[A]n act may be 'intentional' for purposes of civil liability even if the actor

lacked actual knowledge that [their] conduct violated the law." Jerman v. Carlisle,

McNellie, Rini, Kramer, 130 S. Ct. 1605, 1612 (2010). *See also* Kolstad v. American

Dental Assn., 527 US 526, 549 (1999) (holding that willful violations can be found where

a defendant acts with "careless" or "reckless" disregard for federally protected rights).

106.       Here, upon reasonable suspicion and belief, the Defendant CashCall used an

"automatic telephone dialing system" to call the Plaintiff on her cellular telephone.

107.       In the alternative, the Defendant used a "predictive dialing system" to call the

Plaintiff's cellular telephone.

108.       The Defendant did not have the Plaintiff's consent to contact her cell phone.

109.       The Defendant made these calls intentionally or with careless or reckless

disregard that their conduct violated the law.

WHEREFORE, the Plaintiff prays for relief and judgment as follows:

a.   Adjudging that the Defendant violated 47 U.S.C. § 227;

b.   Awarding the Plaintiff statutory damages for each phone call made in violation of this

statute, pursuant to 47 U.S.C. § 227(b)(3);

c.   Adjudging that the Defendant's violations of 47 U.S.C. § 227 were willful or

knowing;

    d.   Awarding the Plaintiff triple damages for each phone call made as provided for by 47

        U.S.C. § 227(b)(3);

    e.   Awarding the Plaintiff any pre-judgment or post-judgment interest as may be allowed

        under the law; and

    f.   Awarding such other and further relief as the Court may deem just and proper.

### Count VIII: Violation of NH RSA 358-C:3

110.     The Plaintiff reasserts and incorporates by reference herein each of the above such

paragraphs as if fully stated within this count.

111.     Debt collectors are prohibited by state law from employing unfair, deceptive, or

unreasonable collection practices in attempting to collect a debt. NH RSA 358-C.

112.     As described more fully herein, the Defendants acts and practices in connection

with the collection of this debt were patently unfair, deceptive, and unreasonable.

113.     The Defendants failed to disclosure to consumers their business relationship with

one another.

114.     The Defendants failed to disclose that CashCall was the de facto lender of the

loan.

115.     The Defendant CashCall at all relevant times treated the Loan as a legitimate,

legal debt, when in fact the Loan was void under state law.  CashCall further threatened

to report the debt to credit reporting agencies, and upon reasonable suspicion and belief,

may have already reported Ms. Jeffery's failure to pay to credit bureaus as if the debt was

legal and legitimate.

116.     In addition, under the act, the Legislature as set forth certain *per se* violations.

"[A]ny debt collection or attempt to collect a debt shall be deemed unfair, deceptive or

unreasonable if the debt collector…"

i) "Communicates or attempts to communicate with the debtor orally or in writing… By placement of phone calls without disclosure of the name of the individual making the call and the name of the person (as defined in RSA 358-C:1, X) for whom the debt collector is attempting to collect the debt, or by using a fictitious name while engaging in the collection of debts…" RSA 358-C:3(I)(e).

ii) "Threatens to take any unlawful action or action which the debt collector in the regular course of business does note take;" RSA 358-C:3(III).

117.     The Defendants, through their convoluted business scheme, have not properly disclosed their corporate names while CashCall attempted to collect on the Loan, in violation of RSA 358-C:3(I)(e).

118.     CashCall has made unlawful threats regarding credit reporting. RSA 358-C:3)(III).

WHEREFORE, the Plaintiff prays for relief and judgment as follows:

a.  Adjudging that the Defendant violated NH RSA 358-C;

b.  Awarding the Plaintiff statutory damages, pursuant to NH RSA 358-C;

c.  Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action as allowed for the NH RSA 358-C;

d.  Awarding the Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

e.  Awarding such other and further relief as the Court may deem just and proper.

### Count IX: Violations of NH RSA 358-A, generally

119.     The Plaintiff reasserts and incorporates by reference herein each of the above such

paragraphs as if fully stated within this count.

120.    Under New Hampshire law, it is unlawful to use any unfair or deceptive act or practice in the conduct of any trade or commerce. NH RSA 358-A:2.

121.    The Defendant was at all relevant times herein engaged in trade or commerce within the State.

122.    As described more fully herein, the Defendants' acts and practices in connection with the nature, marking, and collection of this debt were patently unfair, deceptive, and unreasonable.

123.    The Defendant CashCall attempted to collect on a void debt stemming from an illegal loan agreement.

124.    The Defendants did not disclose their business relationship or the de facto lender of the Loan to the Plaintiff.

125.    The Defendants marketed and represented the Loan as a short term loan.

126.    Furthermore, the Defendants' acts and practices are in violation of the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTCA").  To wit:

  a. The Defendants' extension of credit under the terms provided without examining the ability of consumers to repay is a violation of the FTCA's prohibition on unfair methods of competition;

  b. The exorbitant interest rates charged by the Defendants combined with automatic access to consumers' bank accounts is an unfair method of competition; and

  c. The Defendants' representations of the Loan as a legitimate loan to credit rating agencies is deceptive and an unfair method of competition.

127.     The Defendants, through violating the FTCA, have engaged in numerous deceptive and unfair methods of competition.

128.     Such acts and other acts as described more fully herein are unfair or deceptive acts or practices under RSA 358-A.

WHEREFORE, the Plaintiff prays for relief and judgment, as follows:

  a.  Adjudging that the Defendant violated NH RSA 358-A;

  b.  Awarding the Plaintiff $1,000 in statutory damages, pursuant to NH RSA 358-A:10;

  c.  Find the violation of NH RSA 358-A to be willful or knowing;

  d.  Awarding the Plaintiff treble damages pursuant to NH RSA 358-A:10;

  e.  Awarding the Plaintiff reasonable attorneys' fees and costs incurred in this action as allowed for by NH RSA 358-A:10;

  f.  Awarding the Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

  g.  Awarding any such other and further relief as the Court may deem just and proper.

## Count X: Invasion of Privacy

129.     The Plaintiff reasserts and incorporates by reference herein each of the above such paragraphs as if fully stated within this count.

130.     Defendant CashCall invaded the peace and quiet enjoyment of Plaintiff's home and work through repeated placing of phone calls to the Plaintiff's phone.

131.     Defendant CashCall, without right or justification, intruded upon the seclusion of the Plaintiff.

132.     Defendant CashCall contacted the Plaintiff's employer regarding her alleged debt and the Loan, thereby publicly disclosing private facts.  See Karch v. Baybank FsB, 794

A.2d 763, 774 (N.H. 2002) (determining whether a private fact was made public does

not, as a matter of law, depend on the number of people told).

133.     The Defendant therefore invaded the privacy of the Plaintiff.

134.     Plaintiff suffered damages in loss of enjoyment of life, increased stress, mental

and emotional disturbance, and the resulting physical ailments which accompany such.

WHEREFORE, the Plaintiff prays for relief and judgment, as follows:

     d.   Adjudging that the Defendant CashCall invaded the Plaintiff's privacy;

     e.   Awarding the Plaintiff her actual damages;

     f.   Awarding the Plaintiff treble damages for emotional

     d.   Awarding the Plaintiff any pre-judgment and post-judgment interest as may be

       allowed under the law; and

     e.   Awarding any such other and further relief as the Court may deem just and

       proper.

## Count XI: 18 USC § 1962 - Civil RICO

135.     The Plaintiff reasserts and incorporates by reference herein each of the above such

paragraphs as if fully stated within this count.

136.     " It shall be unlawful for any person who has received any income derived,

directly or indirectly, from a pattern of racketeering activity or through collection of an

unlawful debt in which such person has participated as a principal within the meaning of

section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of

such income, or the proceeds of such income, in acquisition of any interest in, or the

establishment or operation of, any enterprise which is engaged in, or the activities of

which affect, interstate or foreign commerce." 18 USC § 1962(a).

137.     As described herein, CashCall receives income through the collection of unlawful

debts and/or a pattern of racketeering activity with WesternSky, agents of WesternSky or

members of it's affiliated Native American tribe.

138.     "Any person injured in his business or property by reason of a violation of section

1962 of this chapter may sue therefor in any appropriate United States district court and

shall recover threefold the damages he sustains and the cost of the suit, including a

reasonable attorney's fee..." 18 USC §1964.

139.     As described more fully herein, the Plaintiff has been severely financially injured

by these illegal and oppressive lending and collections practices.

WHEREFORE, Plaintiff prays for Judgment in her favor and an award of damages, costs,

and attorneys fees.


### JURY TRIAL REQUESTED

Dated: March 28, 2016

> Respectfully Submitted,
> Plaintiff, By Counsel,
> ASSOCIATED ATTORNEYS
> OF NEW ENGLAND
>
> /s/ John F. Skinner, III
> Atty. John F. Skinner III
> NH BAR: 19886
> 587 Union Street
> Manchester, NH 03104
> Tel:603-622-8100
> Fax:888-912-1497
> Jake@AAONE.Law